## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

AARON LOVELACE                                              PETITIONER
ADC # 151969

VS.                        NO. 5:18-CV-00005-JLH/JTR

WENDY KELLEY, Director,
Arkansas Department of Corrections                          RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes.  You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation.  The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I.  Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus and Amended Petition filed by Aaron Lovelace ("Lovelace"), an inmate in the Arkansas Department of Correction ("ADC").  *Docs. 1 and 6.*  Before addressing the merits of Lovelace's habeas claims, the Court will review the procedural history of his case in state court.

On March 18, 2016, a Jefferson County jury convicted Lovelace of first-degree battery, aggravated robbery, and theft of property. *State v. Lovelace*, Jefferson County Cir. Ct. Case No. 35CR-2014-410-5C; *see* Trial Transcript, *Doc. 12-7 at 42*. As a habitual offender, Lovelace received consecutive sentences of thirty years for first-degree battery and twenty years for aggravated robbery, as well as a $2,500 fine for misdemeanor theft of property. *Id. at 74*.

On direct appeal, Lovelace argued that the trial court erred in denying his motions for directed verdict based on sufficiency of the evidence. Appellant's Brief, *Doc. 12-3*; *Lovelace v. State*, 2017 Ark. App. 146, 516 S.W.3d 300. More specifically, Lovelace argued the only direct evidence implicating him in the crimes was accomplice testimony, and, *under Arkansas law*,[1] a person cannot be convicted of a felony based on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. *Doc. 12-3 at 3-4*.

On March 8, 2017, the Arkansas Court of Appeals rejected Lovelace's argument, determining that the trial court record contained sufficient evidence to

---

[1] *See* Arkansas's accomplice-corroboration requirement at Ark. Code Ann. § 16-89-111(e)(1).

2

corroborate the accomplice testimony. Accordingly, the Court affirmed Lovelace's convictions and sentences. *Lovelace v. State*, 2017 Ark. App. 146, 516 S.W.3d 300.[2]

Lovelace did not file a Rule 37 Petition for postconviction relief in state court.

On February 27, 2018, Lovelace initiated this § 2254 habeas action, asserting two claims. First, he contends his convictions were based on insufficient evidence because the accomplice testimony incriminating him was not adequately corroborated *and* because the accomplice who testified against him was motivated to lie and only testified "in exchange for leniency for his own culpability." *Docs. 6 and 16*. Second, he makes the conclusory argument that he was "denied the constitutionally effective assistance of counsel at trial, on appeal, and, for post-conviction appeal/collateral review[.]" *Doc. 6 at 3*.

On April 30, 2018, Respondent filed a Response, arguing that: (1) Lovelace's claims are not cognizable in a § 2254 habeas action; (2) his claims were reasonably and properly adjudicated under state law; and (3) all of his claims are procedurally

---

[2]  The Court reached the merits of Lovelace's sufficiency of the evidence argument as to the first-degree battery conviction. However, because Lovelace's trial counsel failed to preserve the sufficiency of the evidence claim, as to his aggravated robbery conviction, the Court concluded that claim was barred on procedural grounds. *Lovelace*, 2017 Ark. App. 146, at 8, 516 S.W.3d at 305. Nevertheless, the Court held that "had Lovelace made this argument [with respect to his aggravated robbery conviction] to the trial court, we would have affirmed for the same reasons as we affirm his conviction for battery in the first degree." *Id*.

Finally, the Court affirmed Lovelace's misdemeanor theft of property conviction because misdemeanors are *not* subject to Arkansas's accomplice-corroboration requirement. *Id*. (citing Ark. Code Ann. § 16-89-111(e)(2)).

defaulted. *Doc. 12*.    Thus, Respondent contends this habeas action must be dismissed.

On June 28, 2018, Lovelace filed a Reply. *Doc. 16*.

For the reasons explained below, the Court recommends that Lovelace's habeas Petition be dismissed, with prejudice.

## II.  Discussion

### A.    Sufficiency of the Evidence

Lovelace claims that insufficient evidence was presented to the jury to support his "convictions."[3] Rather than arguing that the evidence, as a whole, was constitutionally insufficient to support his convictions, he contends: "If the [accomplice] testimony . . . is removed, no other evidence independently establishes the crime and Petitioner are in any way connected." *See Doc. 6 at 5*.[4]

---

[3]  Because Lovelace does not specify which of his "convictions" he is challenging, the Court assumes his argument applies to both of his felony convictions.

As to his misdemeanor conviction for theft of property, habeas relief is unavailable because Lovelace received only a fine.  A fine, without more, is not "a significant restraint imposed on one's liberty" that meets the "in custody" requirement of 28 U.S.C. 2241(c).  *Russell v. City of Pierre*, 530 F.2d 791, 792 (8th Cir. 1976); *see also Nielsen v. City of Grant*, No. 13-CV-3543 SRN/JJK, 2014 WL 1607474, at *7 (D. Minn. Apr. 16, 2014); *Stanford v. State of Tenn.*, No. 05-1021-CV-W-GAF, 2006 WL 344775, at *1 (W.D. Mo. Feb. 14, 2006).

[4]  On direct appeal, Lovelace acknowledged "[t]here is no doubt that [accomplice] A[n]phernie Harris' testimony alone would support the conviction . . . were it not for the rule that a conviction cannot stand upon the uncorroborated testimony of an accomplice."  Appellant's Brief, *Doc. 12-3 at 6*.

Claims challenging the sufficiency of the trial evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). *First*, "it is the responsibility of the jury – not the [reviewing] court – to decide what conclusions should be drawn from evidence admitted at trial." *Id*. Evidence is sufficient to support a conviction as long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 654 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Circumstantial evidence is "just as probative as any other type of evidence." *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011); *see Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

*Second*, where a state court has determined that the trial evidence is sufficient, that decision may not be overturned on federal habeas review simply because the federal court disagrees with the state court. *Coleman*, 566 U.S. at 651. Instead, under 28 U.S.C. § 2254(d)(1), the federal court may grant habeas relief only if the state court decision was contrary to, or an objectively unreasonable application of, clearly established United States Supreme Court law. *Id*.; *Cavazos v. Smith*, 132 S.Ct. 2, 4, 6 (2011).

5

In its decision affirming Lovelace's convictions, the Arkansas Court of Appeals summarized the evidence presented at trial as follows:

> The victim, Calvin Giles, was called first to testify. On June 23, 2014, he picked up food from Church's Fried Chicken (Church's); when paying, he pulled out a roll of money, describing it as approximately fifty ones, a check, and a $100 bill on top. When he left Church's, he drove home, pulled into his driveway, turned the car off, got out with his food, walked up to the door, and began to unlock the storm door; he then heard someone yell, "There he goes." According to Giles, he looked to his left and saw two young, black males in his neighbor's yard; a third individual came around the corner of his house, stepped onto the porch, and fired a gun at him, with the first shot shattering his storm door, the second shot hitting him in the upper right thigh, and a third shot not striking anything. As Giles lay on the ground, the gunman ran toward him, demanding Giles give him the money, which Giles did, along with the check in his pocket. After taking the money, the three individuals ran away. Giles acknowledged that while he was unable to see the face of the gunman clearly, he remembered, as he was lying on the ground after being shot, the gunman was wearing green shoelaces. After viewing the video-surveillance tape at trial from Church's, Giles recalled that he saw the individual with the green shoelaces in the video and identified the person wearing the shoestrings as Lovelace.
>
> On cross-examination, Giles admitted he did not mention the green shoelaces in the statement he gave police on the night of the attack. However, on redirect, Giles reiterated he remembered the shooter had taken the check that was with his cash and the shooter had green shoelaces.
>
> James Murray, pastor of Gospel Temple Baptist Church and Giles's neighbor a block or so away, next testified. On June 23, 2014, he was on his porch between eight and nine in the evening when he saw Giles turn onto his street and wave at him. A gray Equinox with at least three people in it turned behind Giles at a high rate of speed. Shortly after the Equinox passed by, he heard three or four gunshots, after which he called both his daughter, who is a Pine Bluff police officer, and 911. Murray did not know who was in the vehicle following Giles.
>
> The third witness was Sergeant Carnell Williams of the Pine Bluff Police Department. He confirmed no fingerprints could be obtained from the shell casings due to the rainy conditions that night, but it was determined that the casings were fired from a 9mm Luger. He also said there were no DNA results from the casings.

Detective Jacqueline Stevenson of the Pine Bluff Police Department then testified. She was dispatched to the shooting. When she and her partner were en route to the scene, a vehicle description was put out and she saw a vehicle matching the description. She got behind the suspected vehicle and activated her siren and lights; two males jumped out of the back seat of the vehicle and ran. Two males remained in the vehicle – the driver, Billy Joe Davis, and the passenger, Anphernie Harris. As a result of receiving information, she identified Lovelace, compared him to the Church's video, and it was the same person.

The State's last witness was Anphernie Harris. His testimony was he was currently on probation and had pending criminal charges in the present case for aggravated robbery and battery in the first degree. He was hoping his testimony in Lovelace's case would earn him favor with the State on his pending charges. Harris recounted that on June 23, 2014, he, Lovelace, and Davis left Conway, picked up a friend of Davis's (Harris did not know his name) in Little Rock, and drove to Pine Bluff, where Lovelace went into Church's. According to Harris, while at Church's, Lovelace returned to the car and said he had seen someone with money, and he wanted to take the money. Lovelace re-entered Church's, Giles came out and got into his car, Lovelace re-entered the car, and they followed Giles to his house. When they arrived at Giles's house, Lovelace and Davis's friend got out of the vehicle; Davis drove a little bit further down the road, parked, and he too got out. Harris heard three shots and the three men came running back, got into the truck, and Lovelace said "nobody say nothing." Harris related further that the three were arguing about who got shot and who shot whom. According to Harris, as they pulled off, a detective car pulled in behind them; Lovelace and Davis's friend jumped out and ran; Davis threw a gun in Harris's lap and told him to run; Harris threw the gun back into Davis's lap; Davis threw the gun out the back passenger door; and he (Harris) gave a statement to the police that night, but he lied in the statement and did not mention Lovelace's name.

Harris gave another statement to police and the prosecutor on July 17, 2015, which closely mirrored his testimony at Lovelace's trial. In that statement, he explained how the four of them came to be at Church's and how Lovelace saw a man inside who had a lot of money and he was "fixing to get him." Harris told Lovelace he was not interested, and Davis told Lovelace "that is on you." Harris asked Davis about leaving, but Davis told him to shut up. Harris then recounted how Giles came out of the restaurant, they followed him to his residence in Davis's vehicle, Lovelace and Davis's friend jumped out of the vehicle, and Davis parked the car and approached with them.

7

Within less than three minutes, Harris heard two or three gunshots; they came running back to the vehicle; he never got out of the car; and when Lovelace and Davis returned, they were arguing about the fact there was not much money and it was not worth it. Lovelace specifically told Harris he was not to say anything, that he was acting like he (Harris) was scared; Harris told Lovelace he was not scared, but he heard gunshots. Lovelace then told Harris he had shot the "dude"; and Davis kept asking Lovelace why he had shot Giles. According to Harris, the police began following them and turned on blue lights; Lovelace and the other man jumped out; Harris jumped in the front passenger seat; Davis told him to run; Harris replied that he was not going to run; Davis told Harris he was "tripping"; Davis threw the gun in his lap; Harris threw the gun back to Davis; Davis threw the gun out the back passenger door; and the police then apprehended him and Davis. Harris thought the handgun Lovelace had was a semi-automatic, and Davis had a chrome .25 caliber semi-automatic.

*Lovelace v. State*, 2017 Ark. App. 146, 1-5, 516 S.W.3d 300, 302-304 (2017).

According to Lovelace, the accomplice testimony of Anphernie Harris ("Harris") was not sufficiently corroborated.[5] Corroboration requirements are

---

[5]    In affirming Lovelace's convictions, the Arkansas Court of Appeals set out the abundance of *other evidence* that corroborated Harris's testimony that Lovelace was guilty of both first-degree battery and aggravated robbery:

> The Church's surveillance video showed [Lovelace] and three other men arriving at the restaurant in a gray Equinox; Lovelace is shown in the restaurant wearing green shoelaces. The video shows Lovelace watching Giles pull out money to pay for his order, Lovelace leaving the restaurant, and then re-entering to pick up his food. The Equinox leaves the parking lot following Giles's vehicle. Giles's neighbor, James Murray, testified he saw a gray Equinox following Giles; he then heard gunshots. Giles testified the man who shot him was wearing green shoelaces; he identified Lovelace in the Church's video as the person wearing the green shoelaces. When the Equinox was pulled over shortly after the shooting, Lovelace and an unidentified man ran from the scene. Fleeing from the scene is indicative of guilt and can corroborate evidence tending to establish guilt. *Anderson v. State*, 354 Ark. 102, 118 S.W.3d 574 (2003). The Equinox matched the vehicle seen on the Church's video, and a still warm box from Church's was in the vehicle. The check stolen from Giles was found on the ground next to the Equinox. All of this evidence corroborates Harris's testimony that Lovelace was the person who shot Giles and took his money and check.

matters of state law which do not implicate federal constitutional rights.[6] *Loeblein v. Dormire*, 229 F.3d 724, 727 (8th Cir. 2000); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("There is . . . no constitutional requirement that accomplice testimony be corroborated."); *Redding v. State of Minn.*, 881 F.2d 575, 578 (8th Cir. 1989) (concluding that accomplice-corroboration requirement was a matter of state law); *DuBois v. Lockhart*, 859 F.2d 1314, 1317 (8th Cir. 1988) (citation omitted); *cf. United States v. Vaughn*, 410 F.3d 1002, 1004 (8th Cir. 2005) (In federal criminal cases, accomplice testimony alone is sufficient to sustain a conviction so long as it is not otherwise incredible or unsubstantial on its face.).  On federal habeas review, the relevant inquiry under *Jackson* is simply whether "the evidence adduced at trial, when viewed in the light most favorable to the government, [is] sufficient to persuade a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) (citations omitted).

Accordingly, Lovelace's sufficiency of the evidence argument, *based on a lack of corroboration of Harris's trial testimony*, is not cognizable as a standalone federal habeas claim. However, "[because] [a]ny challenge to the sufficiency of the

*Lovelace*, 2017 Ark. App. 146 at 9-10, 516 S.W.3d at 306.

[6]  The role of federal habeas courts is narrowly limited "to [a] review [of] state criminal proceedings for compliance with federal constitutional mandates."  *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001); *see also Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) ("As the supreme judicial authority of the state, [the Arkansas Supreme Court] decides what state law is, an issue which cannot itself be reviewed in a federal habeas proceeding.").

9

evidence to convict in a state prosecution is necessarily a due process challenge to the conviction[,]" this Court must now determine if Lovelace's sufficiency of the evidence argument rises to the level of a due process violation. *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992).

Lovelace argues that, because Harris testified in exchange for leniency from the State on his own criminal charges, this gave him a "motive to lie," something the prosecutor allegedly "encouraged him to do. . . ." *Doc. 6 at 4*.  Lovelace asserts that, given those circumstances, the trial court's decision to allow Harris's testimony violated Lovelace's due process right to a fair trial.

"Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper*, 436 F.3d 951, 958-959 (8th Cir. 2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993). Thus, to demonstrate a due process violation, Lovelace must show that the trial court's admission of Harris's testimony was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Rousan*, 436 at 958-959 (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Generally, the existence of a plea agreement affects the *credibility*, not the *admissibility* of a witness's testimony.  *United States v. Starcevic*, 956 F.2d 181, 184

(8th Cir. 1992).  Importantly, it is not unlawful for a prosecutor to promise favors in return for truthful testimony.  *United States v. Irons*, 53 F.3d 947, 948 (8th Cir. 1995) (citing *United States v. Garcia*, 785 F.2d 214, 221 (8th Cir. 1986)).[7]  However, due process requires that the prosecution disclose any promise that a key witness will not be prosecuted in exchange for his agreement to testify.  *Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir. 2004) (citing *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)).  Evidence of such an agreement is relevant to the witness's credibility, and the jury is entitled to know of it.  *Id*.

Here, the record establishes that: (1) Harris gave an initial statement to the police on the night of his arrest, shortly after the robbery, and did not mention Lovelace's name;[8] (2) a year later, on July 17, 2015, Harris gave a sworn recorded statement to the prosecutor incriminating Lovelace;[9] (3) at the beginning of the recorded statement, the prosecutor communicated a tentative "plea offer" of either probation or a *nolle prosse* in exchange for Harris's recorded statement;[10] (4) the

---

[7]  18 U.S.C. § 201(c)(2), the criminal statute that makes it illegal for "whoever" to give anything of value to another for testimony under oath at trial, "does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." *United States v. Brown*, 183 F.3d 740, 742 (8th Cir. 1999) (citations omitted).

[8]  *Doc. 12-6 at 243-244*.

[9]  *Id. at 246*.

[10]  Prosecutor: You understand the purpose . . . here today is to take a sworn
            statement from you about the events that took place that
            you've been charged in . . . And in exchange for that, we

prosecutor told Harris that he was interested only in the truth and explained the

penalty for perjury if Harris told a lie in making his statement;[11] (5) after Harris gave

the recorded statement, he was released on a cash bond;[12] (6) at trial, the entire

---

                                    have discussed the possibility of a plea offer . . . that plea
                                    offer could be felony probation . . . or a nolle prosse.

*Doc. 12-6 at 250.*

[11] Prosecutor: Okay. We're here today because you've indicated that you
                      desire to tell the truth in this matter. Is that right?
      Harris:         Yes, sir.
      Prosecutor: Okay. Are you motivated to lie to us to get a good plea offer?
      Harris:         No, sir, I'm not.
      Prosecutor: Or is it your intent to tell us the truth today?
      Harris:         Yes, sir, it is.
      Prosecutor: Okay. You understand that I am a prosecuting attorney and
                      that the law gives me the authority to place you under oath,
                      the same as if you were in a courtroom?
      Harris:         Yes, sir, I do.
                    . . .
      Prosecutor: . . . Have you ever heard the term "perjury" before?
      Harris:         No, sir.
      Prosecutor: Okay. Perjury is an actual criminal charge.
      Harris:         Yes, sir.
      Prosecutor: Whereby, if you're under oath and you knowingly tell a lie,
                      you could be charged with a felony count of perjury. Okay?
      Harris:         Yes, sir.

*Doc. 12-6 at 251-252.*

[12]  At trial, during cross-examination by Lovelace's counsel, Harris admitted he was not
able to bond out of jail until after he gave the recorded statement:

      Mr. Hall:    That statement we just heard.
      Harris:       Yes, sir.
      Mr. Hall:    You were in jail?
      Harris:       Yes, sir.
      Mr. Hall:    And then that statement got you out of jail. Is that right?
      Harris:       Yes, sir.
      Mr. Hall:    Did you have to post any bond?
      Harris:       Yes, sir, I did.

recorded statement, including the prosecutor's explanation of the plea offer, was played for the jury;[13] (7) Harris acknowledged in front of the jury that he hoped his testimony in Lovelace's case would earn him favor with the State on the criminal charges pending against him;[14] and (8) a month after Lovelace's trial, the State *nolle prossed* the criminal charges against Harris.[15]

These undisputed facts make it clear that Lovelace's due process right to a fair trial was *not* violated by the admission into evidence of Harris's testimony. The recorded statement of Harris's tentative plea offer was neither coercive nor

---

| Mr. Hall: | Your bond got reduced after you gave that statement? |
| Harris: | It was a cash bond. . . . I had a no bond, and then I got a bond. |
| | . . . |
| Mr. Hall: | So telling this statement made your situation better. Is that right? |
| Harris: | I guess so, if that's – |
| Mr. Hall: | You are out – you're in the free world now, aren't you? |
| Harris: | Yes, sir. |

*Doc. 12-6 at 272-273*.

    [13]  *Doc. 12-6 at 248-269*.

| [14] Prosecutor: | And let's be honest, Mr. Harris. You are hoping your testimony today earns you some favor with the State, isn't it [*sic*]? |
| Harris: | Yes, sir. |
| Prosecutor: | Has the State been clear with you from the beginning that all they are interested in is the truth? |
| Harris: | Yes, sir. |
| Prosecutor: | And has the State made it clear to you that, should you not tell the truth, it would probably be to your detriment. |
| Harris: | Yes, sir. |

*Doc. 12-6 at 235-236*.

    [15]  *See State v. Harris*, Jefferson County Cir. Ct. Case No. 35CR-14-410B, accessible online at https://caseinfo.arcourts.gov.

conditioned on anything other than him telling the truth. The recording of Harris's tentative plea offer and statement, along with the fact that Harris was thereafter released on bond, were all disclosed to the jury. Finally, Lovelace's attorney effectively cross-examined Harris on these issues.

Given these indisputable facts, the plea offer affected only the *credibility* of Harris's testimony, which is the province of the jury. *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005). It was for the jury to decide whether to believe Harris's testimony, and the jury was "sufficiently apprised of the potential taint on the witness's credibility to ensure a fair trial." *Clay*, 367 F.3d at 1000 (citing *Burton v. Dormire*, 295 F.3d 839, 847 (8th Cir. 2002)). While the jury was free to disbelieve Harris's testimony based on either his status as an accomplice or his incentive for testifying at trial, *Jackson* did not require that Harris's testimony be excluded on due process grounds. *See Harrington*, 983 F.2d at 874.

Harris's trial testimony and his recorded statement were plainly sufficient to sustain Lovelace's convictions. However, as noted by the Arkansas Court of Appeals, there was still more independent evidence that supported both Harris's testimony and Lovelace's convictions. The video evidence placed Lovelace, who was wearing green shoelaces, inside Church's Chicken with Giles, as he was paying for his food, and it showed Lovelace watching Giles pay. The video evidence also showed Lovelace get in a grey Chevrolet Equinox and follow Giles out of the

Church's Chicken parking lot. Giles's neighbor testified that he saw a grey Chevrolet Equinox following Giles's car through the neighborhood at a high rate of speed and then heard gunshots shortly thereafter. Finally, Giles testified the man who shot and robbed him was wearing green shoelaces.

After carefully considering *all* of the evidence presented at Lovelace's trial, in the light most favorable to the prosecution, the Court concludes that a rational juror could find, beyond a reasonable doubt, that: (1) Lovelace, with the purpose of causing physical injury to Giles, shot him with a handgun; and (2) Lovelace, while armed with a handgun, employed physical force upon Giles (and then threatened to employ further physical force), with the purpose of taking Giles's money.[16]

Thus, there is no plausible basis for concluding that the Arkansas Court of Appeals' rejection of Lovelace's sufficiency of the evidence claim was contrary to, or involved an unreasonable application of the legal standard articulated in *Jackson*, or based on an unreasonable determination of the facts in light of the trial evidence. Accordingly, the Court recommends that Lovelace's sufficiency of the evidence claim be dismissed, with prejudice.

---

[16]  The substantive elements of state crimes are defined by state law. *Jackson*, 443 U.S. at 324 n. 16. "A person commits battery in the first degree if . . . [w]ith the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm[.]" Ark. Code Ann. § 5-13-201(a)(8) (Repl. 2013). "A person commits aggravated robbery if he . . . [with the purpose of committing a felony or misdemeanor theft] employs or threatens to immediately employ physical force upon another person, and the person . . . is armed with a deadly weapon . . . or inflicts or attempts to inflict death or serious physical injury upon another person." Ark Code Ann. §§ 5-12-102, 5-12-103 (Repl. 2013).

### B.    Ineffective Assistance of Counsel

Lovelace also makes the conclusory argument that he was denied effective assistance of counsel at trial, on appeal, and at the postconviction phase.[17] *Doc. 6*. However, he fails to allege *any* specific wrongdoing or resulting prejudice.  *Id*.

"In order to warrant relief . . . a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim."  *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987); *see also* Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts (A § 2254 habeas petition "must state the facts supporting each ground.").  In the context of an ineffective assistance of counsel claim, Lovelace must establish that his counsel's assistance fell below an objective standard of reasonableness and that he suffered actual prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The only thing Lovelace points to as support for this claim is a reference to the Arkansas Court of Appeals' ruling, on direct appeal, that his trial counsel failed to preserve the sufficiency of the evidence argument as to his aggravated robbery conviction.  *Doc. 16 at 5*.  However, the Arkansas Court of Appeals went on to hold

---

[17]    To the extent Lovelace is attempting to allege a freestanding claim of ineffective assistance of postconviction counsel, based on the absence of counsel to assist him in pursuing Rule 37 relief in state court, such a claim is not cognizable on federal habeas review.  28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Barnett v. Roper*, 904 F.3d 623, 629 (8th Cir. 2018); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (there is no constitutional right to an attorney in state postconviction proceedings).

that "[even] had Lovelace made this argument to the trial court [that there was no corroboration of Harris's accomplice testimony about Lovelace's commission of the aggravated robbery], we would have affirmed [on the merits] for the same reasons as we affirm his conviction for battery in the first degree." *Lovelace v. State*, 2017 Ark. App. 146, 8, 516 S.W.3d 300, 305 (2017).  This alternative holding by the Arkansas Court of Appeals foreclosed *any prejudice* from Lovelace's trial counsel's failure to preserve the issue.  *Strickland*, 466 U.S. at 687.[18]

Accordingly, the Court recommends that Lovelace's conclusory ineffective assistance of counsel claims be dismissed, with prejudice.

---

[18]   Respondent additionally argues that Lovelace's factually unsupported ineffective assistance of counsel claims are barred by procedural default because Lovelace failed to file a Rule 37 Petition.  The Court agrees.

Habeas petitioners procedurally default their habeas claims if: (1) they have not exhausted remedies that were available in state court; and (2) they can no longer return to state court to raise those habeas claims on a timely basis.  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).  Under Arkansas law, ineffective assistance of trial counsel claims generally must be raised in a Rule 37 petition and may not be considered on direct appeal.  *Ratchford v. State*, 357 Ark. 27, 31 (2004).

Lovelace admits that he "did not file any state postconviction pleadings [*i.e.*, a Rule 37 Petition]."  While the procedural default of an ineffective assistance of trial counsel claim may, in limited circumstances, be excused based on the equitable rule set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012), a petitioner must, at a minimum, *initiate* a Rule 37 proceeding to get the benefit of *Martinez*.  *See Johnson v. Kelley*, No. 518CV00079, 2018 WL 5993826, at *4 (E.D. Ark. Oct. 15, 2018), report and recommendation adopted, No. 5:18-CV-79, 2018 WL 5985684 (E.D. Ark. Nov. 14, 2018) (citing *Lane v. Kelley*, No. 5:16CV00355, 2017 WL 5473925, at *4 (E.D. Ark. Nov. 14, 2017), report and recommendation adopted, No. 5:16-CV-355, 2017 WL 6542748 (E.D. Ark. Dec. 21, 2017) (petition must, at a minimum, initiate a "state collateral review proceeding" by filing a Rule 37 petition with the state trial court before he can rely on *Martinez* to excuse his procedural default)).

Thus, Lovelace's failure to file a Rule 37 Petition would bar him from invoking *Martinez* to excuse his procedurally defaulted ineffective assistance of counsel claims, had he properly asserted those claims.

### III.   Conclusion

IT IS THEREFORE RECOMMENDED, that Petitioner Aaron Lovelace's Petition for Writ of Habeas Corpus pursuant to § 2254, *Doc. 6*, be dismissed, with prejudice.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED.

Dated this 3rd day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

18